UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD JOHN PAWLAK,

                                                              19-CV-165-MJR
                                                              DECISION AND ORDER

                              Plaintiff,

           -v-

ANDREW SAUL,
Commissioner of Social Security,

                              Defendant.
_____

          Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 16).

          Plaintiff Richard John Pawlak brings this action pursuant to 42 U.S.C. §§405(g)

and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social

Security finding him ineligible for Supplemental Security Income ("SSI") under the Social

Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant

to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, Plaintiff's

motion (Dkt. No. 11) is denied, the Commissioner's motion (Dkt. No. 14) is granted, and

the case is dismissed.

## BACKGROUND[1]

          Plaintiff protectively filed an application for SSI on January 6, 2015, alleging a

disability as of May 1, 2013, due to myocardial infarction, high blood pressure,

osteoarthritis, right-knee pain, anxiety, and depression.  (Tr. 15, 231-235, 260). [2]  His

---

[1] The Court assumes the parties' familiarity with the record in this case.
[2] References to "Tr." are to the administrative record in this case.

claim was initially denied on January 19, 2016.  (Tr. 162-173).  On February 16, 2016, Plaintiff filed a timely written request for a hearing.  (Tr. 176-178).

On February 12, 2018, a hearing was conducted by Administrative Law Judge ("ALJ") Stephen Cordovani, in Buffalo, New York.  (Tr. 38-83).  Plaintiff appeared, along with his attorney.  A vocational expert also appeared.

On May 2, 2018, the ALJ issued a decision finding Plaintiff not disabled.  (Tr. 12-37).  That decision became final when on December 3, 2018, the Appeals Council denied his request for review.  (Tr. 1-6).  This action followed.

## DISCUSSION

### I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).  First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity."  *Id.* §§404.1520(b), 416.920(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience."  *Id.* §§404.1520(b), 416.920(b).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment."  *Id.* §§404.1520(c), 416.920(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.* §§404.1520(c), 416.920(c).  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations.  *Id.* §§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in

- 4 -

Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Plaintiff had not engaged in substantial activity since January 6, 2015, the application date.  (Tr. 18).  At step two, the ALJ concluded that Plaintiff has the following severe impairments: major depressive disorder, recurrent, without psychotic features; post-traumatic stress disorder with panic attacks; degenerative joint disease of the right knee/patellofemoral syndrome; asthma/chronic obstructive pulmonary disease; and obesity.  (Tr. 18-20).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 20-23).  Before proceeding to step four, the ALJ assessed Plaintiff's RFC, in pertinent part, as follows:

> [T]he claimant has the residual functional capacity to perform medium work . . . except the claimant can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally kneel, crouch, crawl, and squat.  The claimant must avoid work on uneven ground.  The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. The claimant is capable of work in a low stress work environment reflected by understanding, remembering, and carrying out simple and routine instructions and tasks, no supervisory duties, no independent decision-making, no strict production quotas or production rate pace, minimal changes in work routine and processes.  The claimant can have occasional interaction with supervisors with no or only incidental interaction with co-workers and the general public.

(Tr. 23).   Proceeding to step four, the ALJ found that Plaintiff has no past relevant work.
(Tr. 30).   At step five, the ALJ found that, considering Plaintiff's age, education, work
experience, and RFC, there are jobs that exist in significant numbers in the national
economy that he can perform, such as Laundry Worker II, Kitchen Helper, and Floor
Waxer.   (Tr. 30-31).   Accordingly, the ALJ concluded that Plaintiff is not disabled under
the Act.  (Tr. 31).

IV.   _Plaintiff's Challenge_

Plaintiff argues that the ALJ erred by failing to evaluate properly the medical
opinions of his treating physician, Dr. James Matthews, M.D., and that the case must
therefore be remanded.  The Court disagrees.

On February 16, 2015, Dr. Matthews, Plaintiff's primary-care doctor, completed a
"Medical Report for Determination of Disability" in which he wrote that Plaintiff had severe,
disabling anxiety and could not work.  (Tr. 611–12).  He further indicated that Plaintiff had
marked restrictions in activities of daily living and a seriously impaired ability to relate to
others.  (Tr. 612).

On June 25, 2015, Dr. Matthews completed a different form in which he indicated
that Plaintiff had "disabling anxiety" and chronic pain.   (Tr. 609–10).   Dr. Matthews
concluded that Plaintiff was moderately limited in walking, standing, sitting, and using his
hands and very limited in lifting, carrying, pushing, pulling, and bending.   (Tr. 610).
Additionally, he wrote that Plaintiff was very limited in maintaining attention and
concentration.  (Tr. 610).  Dr. Matthews also opined that Plaintiff was moderately limited
in understanding, remembering, and carrying out instructions; making simple decisions;

interacting appropriately with others; and maintaining socially appropriate behavior.  (Tr. 610).  Dr. Matthews wrote that Plaintiff was unable to work (Tr. 610).

The ALJ considered but gave only little weight to Dr. Matthews's opinions.  (Tr. 29).  The ALJ found that the limitations contained in Dr. Matthew's opinions were inconsistent with the evidence as a whole, including Plaintiff's daily activities and the normal findings from his musculoskeletal, neurological, and psychiatric examinations. (Tr. 29).  Further, Dr. Matthews's opinions contained no specific work-related limitations and addressed an issue reserved to the Commissioner.  (Tr. 29).  Contrary to Plaintiff's argument, the Court finds that there is substantial evidence to support how the ALJ weighed Dr. Matthews's opinions.

Under the "treating physician rule" set out in 20 C.F.R. section 416.927(c), the opinion of a claimant's treating physician is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  See *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  When a treating physician's opinion is not entitled to controlling weight, the ALJ must consider the following factors: (1) the frequency of examination; (2) the length, nature, and extent of the treatment relationship; (3) the degree to which the treating physician cites evidence to support his or her opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors that tend to support or contradict the opinion.  See 20 C.F.R. § 416.927(c)(1)–(6); see also *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (identifying the factors that the ALJ must consider when weighing medical opinions).

A reviewing court should remand for failure to explicitly consider the relevant factors unless a "searching review of the record shows that the ALJ has provided 'good reasons' for [the] weight assessment."  See *Guerra v. Saul*, No. 18-2646-CV, 2019 WL 4897032, at *1 (2d Cir. Oct. 4, 2019).  The agency's regulations do not require a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Here, although the ALJ did not explicitly consider the relevant regulatory factors, the Court finds that the ALJ gave several good reasons, supported by substantial evidence, for giving only little weight to Dr. Matthews's opinions.  As the ALJ observed initially, Dr. Matthews's statements that Plaintiff could not work addressed an issue reserved to the Commissioner, and thus were not medical opinions that could ever be entitled to controlling weight.  (Tr. 29, 610–611).  See 20 C.F.R. § 416.927(d)(1) (opinions on matters that are reserved to the Commissioner are not "medical opinions" as defined in the regulations and receive no special significance); *Claymore v. Astrue*, 519 F. App' x 36, 38 (2d Cir. 2013) (a treating physician's statement that the claimant is disabled cannot itself be determinative); *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) (opinion that the claimant was "temporarily totally disabled" was not entitled to any weight because the ultimate issue of disability is reserved for the Commissioner);  *Valdez v. Colvin*, 232 F. Supp. 3d 543, 553 (S.D.N.Y. 2017) (the opinion of a treating doctor that the claimant is "disabled" or "unable to work" is not controlling because such statements are not medical opinions, but rather opinions on issues reserved to the Commissioner).

Although those statements were not entitled to controlling weight, the ALJ weighed

them, along with the remainder of Dr. Matthews's opinions, using the regulatory factors for weighing medical opinions.  The ALJ acknowledged that Dr. Matthews was Plaintiff's treating and examining doctor.  (Tr. 29).  See 20 C.F.R. § 416.927(c)(1)–(2) (recognizing that the agency generally gives more weight to the opinions from treating and examining sources).  However, the ALJ determined that Dr. Matthews's opinions merited only little weight because they were inconsistent with the generally normal findings from Plaintiff's musculoskeletal, neurological, and psychiatric examinations.  (Tr. 29).  See 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (a treating physician's opinion is not afforded controlling weight where it is inconsistent with other substantial evidence in the record).

As noted above, Dr. Matthews concluded that Plaintiff was moderately limited in walking, standing, sitting, and using his hands, and very limited in lifting, carrying, pushing, pulling, and bending, due to "chronic pain."  (Tr. 609–610).  However, Dr. Matthews's own physical examinations of Plaintiff were generally normal, revealing only a "mild" or "small" knee effusion on two occasions, and thickened tendons in his hands on one occasion.  (Tr. 668, 684, 740).  Dr. Matthews's other physical examinations of Plaintiff were generally normal. (Tr. 665, 672, 674, 681, 689, 692, 695, 697, 700–701, 704, 707, 713, 716, 722, 728,1416, 1421, 1428).  Indeed, Dr. Matthews consistently observed that Plaintiff looked well and was in no distress (Tr. 672, 681, 684, 687, 695, 710, 740, 1416, 1421, 1428).  Thus, there was substantial evidence for the ALJ to find that Dr. Matthews's treatment notes did not support that Plaintiff had significant physical limitations.

Examinations by Plaintiff's other treatment providers similarly contradicted Dr. Matthews's opinions about Plaintiff's physical limitations. For example, orthopedic examinations revealed that Plaintiff's knees had mild to moderate tenderness, but full or nearly-full range of motion, full strength, full sensation, and no effusions or instability. (Tr. 1196, 1199). Imaging studies of Plaintiff's knees were normal or showed only "very early" degenerative joint disease. (Tr. 457, 774, 1190). Other examinations revealed that Plaintiff's lower extremities had full range of motion, full strength, and full sensation. (Tr. 356, 415, 518–19, 901, 1044, 1131, 1340, 1361, 1386). Further, Plaintiff consistently had a normal gait. (Tr. 356, 415, 518–19, 601, 901, 956, 1036, 1044, 1071, 1594). Physical examinations by Dr. Rania Karam Bayoumi, Dr. Matthew's colleague, were unremarkable. (Tr. 725, 728, 731, 737).

A November 2015 consultative examination by Dr. John Schwab, D.O., similarly revealed only minimal findings. (Tr. 630–35). Specifically, Plaintiff had full range of motion in his back, neck, shoulders, elbows, and forearms; stable and non-tender joints; normal strength, reflexes, and sensation in his upper and lower extremities; no edema or muscle atrophy in his extremities; and full strength and dexterity in his hands (Tr. 631, 633). An x-ray of Plaintiff's lumbar spine was normal. (Tr. 635). Dr. Schwab opined that Plaintiff had only mild restrictions in walking and climbing stairs/ladders. (Tr. 633).

The above normal or mild findings support the ALJ's finding that the physical limitations contained in Dr. Matthews's opinions were inconsistent with the record. See *Woodmancy v. Colvin*, 577 F. App'x 72, 75 (2d Cir. 2014) (ALJ properly assigned little weight to treating physician's opinion when contradicted by unremarkable clinical findings; 20 C.F.R. § 416.929(c)(2) (objective evidence showing reduced joint motion,

muscle spasm, sensory deficit, or motor disruption is a useful indicator of the intensity and persistence of a claimant's symptoms).

The clinical findings from Plaintiff's psychiatric examinations similarly did not support Dr. Matthews's opinions that Plaintiff had disabling mental limitations.  For example, although Plaintiff frequently appeared anxious or agitated at Dr. Matthews's appointments (Tr. 668, 681, 704, 713, 715), those symptoms often coincided with Plaintiff being out of his medication from non-compliance, or with situational stressors, such as the death of his girlfriend or losing his housing.  (Tr. 686, 688, 703–704, 706, 709, 712–713, 715, 719).  See *Taillon v. Comm'r of Soc. Sec.*, No. 17-CV-6812, 2019 WL 1396837, at *4 (W.D.N.Y. Mar. 28, 2019) ("Situational stressors are not a basis for a finding of disability and may be considered when evaluating a claimant's subjective reports.").  Moreover, the mere fact that Plaintiff was anxious or agitated does not necessarily mean that he was unable to work.  Further, Plaintiff had an appropriate mood and affect at other appointments with Dr. Matthews.  (Tr. 710, 728, 740).

The psychiatric or neurological examinations performed by Plaintiff's other treating providers similarly did not support that Plaintiff had disabling mental limitations.  Because Plaintiff frequently missed his counseling appointments and rarely, if ever, saw a psychiatrist during his mental-health treatment at Spectrum Human Services, those records contained few mental-status examinations.  (Tr. 624, 993, 1415, 1419, 1457, 1460, 1582–1583).  Even then, as the ALJ noted, the mental-status examinations that were performed revealed relatively few abnormal findings.  (Tr. 27, 1587–1589, 1591, 1594).  Further, a neurological examination conducted for Plaintiff's purported memory loss was normal.  (Tr. 27, 518–519).  Specifically, Plaintiff had intact memory, good eye

contact, no decreased fund of knowledge, and fluent and articulate speech.  (Tr. 27, 518–519).  Psychiatric examinations by Plaintiff's other doctors revealed that Plaintiff was cooperative and had a normal mood and affect.  (Tr. 27, 464, 513, 601, 619, 725, 728, 731, 734, 737, 752, 956, 1036, 1044, 1131, 1196, 1199, 1226, 1340, 1361, 1450, 1598).

The results of a November 2015 consultative psychological examination by Dr. Janine Ippolito, Psy.D., were similar to those above.  (Tr. 626–627).  Specifically, although Plaintiff had a depressed mood, dysthymic affect, and somewhat circumstantial thought processes, he had adequate social skills, a cooperative demeanor, appropriate eye contact, normal motor behavior, normal speech, clear sensorium, full orientation, average cognitive functioning, good insight and judgment, only mildly impaired memory, and intact attention and concentration.  (Tr. 626–27).

Although the findings from Plaintiff's mental or psychiatric examinations supported some limitations, they did not support disabling restrictions.  See *Downs v. Colvin*, No. 6:15-CV-06644(MAT), 2016 WL 5348755, at *4 (W.D.N.Y. Sept. 26, 2016) (normal mental status examinations undermined that the claimant had disabling mental limitations); *Newell v. Colvin*, No. 15-CV-6262P, 2016 WL 4524809, at *14 (W.D.N.Y. Aug. 30, 2016) (ALJ properly discredited opinion that the claimant had stress-related limitations based upon the "largely normal" findings from the claimant's mental-status examinations), reconsideration denied, No. 15-CV-6262P, 2017 WL 1541239 (W.D.N.Y. Apr. 28, 2017); see also *Brown v. Berryhill*, No. 6:17-CV-06584-MAT, 2018 WL 1827662, at *3 (W.D.N.Y. Apr. 16, 2018) (ALJ properly discredited an opinion that the claimant had disabling mental limitations because it was inconsistent with the claimant's mental-status examinations,

which consistently revealed that the claimant was well-groomed, fully oriented and cooperative, and had good concentration, intact memory, and logical thoughts).

In addition to being inconsistent with the mostly normal findings from Plaintiff's physical and psychiatric examinations, Dr. Matthews's opinions were inconsistent with Plaintiff's daily activities.  (Tr. 29).  As the ALJ noted, Plaintiff handled his own personal care, prepared simple meals, performed household chores, socialized with friends and family, shopped, attended church, went to the library, played computer games, handled his own finances, read the Bible, and used public transportation.  (Tr. 24, 271–275, 626, 632, 1569).  Plaintiff's treatment records reflected that he pursued his activities of daily living without difficulty, worked on his car, ran for a train, carried heavy objects up several flights of stairs, set up a tent for the Taste of Buffalo, and did "lots of walking," including while carrying groceries.  (Tr. 448, 517, 592, 739, 741, 751, 1202).

Those activities supported a finding of greater abilities in sitting, walking, standing, using his hands, interacting with others, carrying out instructions, concentrating, and making simple decisions than reflected in Dr. Matthews's opinions.  (Tr. 610).  They also contradicted Dr. Matthews's statement that Plaintiff had marked restrictions in activities of daily living.  (Tr. 612).  See *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (the claimant's daily activities undermined that he had disabling limitations); *Brown*, 2018 WL 1827662, at *4 (ALJ properly discredited opinion that the claimant had disabling mental limitations because it was inconsistent with the claimant's activities of daily living, which included cooking, cleaning, doing laundry, and shopping).

Other regulatory factors further undermined the persuasiveness of Dr. Matthews's opinions.  For example, the ALJ emphasized that Dr. Matthews's opinions

were conclusory.  (Tr. 29).  Specifically, Dr. Matthews did not cite any clinical findings or otherwise explain how the medical evidence of record supported his opinions.  (Tr. 609–612).  This type of conclusory opinion is not persuasive.  See 20 C.F.R. § 416.927(c)(3) (indicating that the degree to which a medical source presents supporting evidence and explains the basis for his or her opinion are factors to consider in weighing opinions).

Additionally, the ALJ emphasized that Dr. Matthews provided no specific function-by-function assessment of Plaintiff's work-related abilities, which reduced its probative value further.  (Tr. 29).  *Wojtkowski v. Comm'r of Soc. Sec.*, No. 18-CV-0511-MJR, 2019 WL 4051687, at *6 (W.D.N.Y. Aug. 28, 2019) (ALJ properly rejected a medical opinion, in part, because it contained no work-related limitations); *Vincent F. v. Comm'r of Soc. Sec.*, No. 1:17-CV-0446 (TWD), 2018 WL 4471525, at *7 (N.D.N.Y. Sept. 18, 2018) (ALJ properly discredited opinions from treating sources because they "provide[d] no insight as to [the claimant's] actual limitations and were therefore of little value to the ALJ in determining [the claimant's] RFC").

In sum, based on the record as a whole, the Court finds that the ALJ gave good reasons, supported by substantial evidence, for giving only little weight to Dr. Matthews's opinions

In his motion, Plaintiff does not cite any objective evidence that supported the limitations contained in Dr. Matthews's opinions.  Instead, he argues that the ALJ was not permitted to rely upon the grossly normal clinical findings of in the record to reject Dr. Matthews's opinions about Plaintiff's sitting and manipulative limitations because Dr. Matthews attributed those limitations to chronic pain, and there is "no objective

measurement for pain." Plaintiff cites no authority for his position, and it is contrary to the regulations and case law.

The regulations expressly state that subjective complaints, or "statements about [the claimant's] pain or other symptoms will not alone establish disability." See 20 C.F.R. § 416.929(a); *Shelley v. Comm'r of Soc. Sec.*, No. 1:18-CV-697-DB, 2019 WL 4805023, at *8 (W.D.N.Y. Oct. 1, 2019). Rather, there must be some objective evidence to support that a claimant has disabling limitations. See 20 C.F.R. § 416.929(a). Indeed, the regulations expressly provide that an ALJ will evaluate a claimant's symptoms—such as pain—by considering the objective evidence of record, including whether there is evidence of muscle spasm, reduced range of motion, sensory deficits, or motor disruption. See 20 C.F.R. § 416.929(c)(2). Accordingly, the ALJ properly considered the generally normal clinical findings from Plaintiff's examinations when evaluating the limitations that Dr. Matthews attributed to Plaintiff's purported chronic pain.

Plaintiff further argues that the ALJ was not permitted to rely on "insignificant" daily activities to reject Dr. Matthews's opinions and contends that the ALJ did not explain how Plaintiff's ability to perform various daily activities translated into the ability to perform a full-time competitive job. The Court finds this argument without merit.

The ALJ did not rely upon Plaintiff's daily activities to support that he could work. Rather, the ALJ's point was that Plaintiff's daily activities supported greater functioning than reflected in Dr. Matthews's opinions. (Tr. 29). Further, contrary to Plaintiff's argument, there is evidence in the record that Plaintiff engaged in more than "insignificant" daily activities, as discussed above.

The fact that Dr. Matthews's opinions were inconsistent with the objective evidence

of record and Plaintiff's daily activities provided a sufficient basis for the ALJ to discredit those opinions.   See 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); see also *Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (ALJ properly gave little weight to a treating source's opinion because it was inconsistent with his treatment notes, the claimant's daily activities, and the other medical opinions of record); *Legg v. Colvin*, 574 F. App'x 48, 49 (2d Cir. 2014) (the ALJ gave good reasons for discrediting a treating physician's opinion because it was inconsistent with the objective evidence of record and the reports of other physicians).

Citing *Garcia Medina v. Commissioner of Social Security*, No. 17-CV-6793-JWF, 2019 WL 1230081 (W.D.N.Y. Mar. 15, 2019), Plaintiff contends that the ALJ was not permitted to "punish" Dr. Matthews for using Department of Social Services forms to provide his opinions.   However, Plaintiff's reliance on *Garcia Medina* is misplaced.   In *Garcia Medina*, the court held that the ALJ erred by discrediting a treating physician's opinion because it consisted largely of checked-off responses.   *Garcia Medina*, 2019 WL 1230081, at *3–4 (W.D.N.Y. Mar. 15, 2019).   Here, in contrast, the ALJ did not fault Dr. Matthews for using a check-the-box form.   (Tr. 29).   Rather, the ALJ properly noted that Dr. Matthews did not provide any specific work-related limitations, despite one of the forms asking for such information.   (Tr. 29, 610).   As explained above, the lack of any actual work-related limitations limited the probative value of Dr. Matthews's opinions.   See *Wojtkowski,* 2019 WL 4051687, at *6 (ALJ properly rejected a medical opinion, in part, because it contained no work-related limitations).

Additionally, the ALJ emphasized that Dr. Matthews's opinions were conclusory

- 17 -

because Dr. Matthews cited no clinical findings and provided little to no explanation for his opinions, despite the forms asking for such information. (Tr. 609–12). The regulations for weighing medical opinions provide that the degree to which a medical source presents supporting evidence and explains the basis for his or her opinion are factors to consider in weighing opinions. See 20 C.F.R. § 416.927(c)(3); see also *Shelley v. Comm'r of Soc. Sec.*, 2019 WL 4805023, at *9 (acknowledging that the more a medical source presents evidence to support a medical opinion, the more weight is given to that opinion). Thus, the cursory manner in which Dr. Matthews completed the forms is why the ALJ rendered his opinions of little value, not the mere fact that he used forms provided by the Department of Social Services.

Plaintiff further argues that the ALJ should have re-contacted Dr. Matthews to obtain additional information or specific functional assessments. The Court finds this argument without merit. An ALJ need not re-contact a treating doctor where, as here, an ALJ discredits the opinion because it is inconsistent with the other evidence of record. As the Second Circuit has stated, "[t]he duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with [his] own prior opinions and the rest of the record." *Morris v. Berryhill*, 721 F. App'x 25, 28 (2d Cir. 2018); see also *Rusin*, 726 F. App'x at 839–40 (the ALJ was under no obligation to re-contact a treating source to resolve inconsistencies between the doctor's opinion and treatment notations, where there were no obvious gaps in the administrative record and the ALJ possessed the claimant's complete medical history). Accordingly, the ALJ committed no error by not re-contacting Dr. Matthews.

Plaintiff also contends that the ALJ inconsistently weighed the opinions of record. Specifically, he argues that the severity terms used for the mental limitations in Dr. Matthews's opinion were "identical" to those in Dr. Ippolito's opinion, to which the ALJ gave great weight. However, the ALJ never indicated that he discredited Dr. Matthews's opinion because he used terms such as "moderate" or "very limited" when describing Plaintiff's mental limitations. Rather, as discussed above, the ALJ found that Dr. Matthews's opinions were conclusory because they referenced no clinical findings and offered little to no explanation. (Tr. 29). Moreover, Dr. Matthews's treatment notes contained very brief physical and mental examinations (Tr. 672, 674, 681, 684, 689, 692, 695, 697, 700–701, 704, 707, 713, 716, 722, 728, 740, 1416, 1421, 1428). In contrast, Dr. Ippolito explained the results of a detailed mental-status examination of Plaintiff, which provided context for her opinion. See *Richardson v. Comm'r of Soc. Sec.*, No. 1:16-CV-00658-MAT, 2018 WL 3633199, at *3 (W.D.N.Y. July 30, 2018) (holding that a term, such as moderate, is not vague when a consultative examiner "conducts a thorough examination and explains the basis for the opinion").

Lastly, Plaintiff argues that the ALJ erred by giving more weight to Dr. Ippolito's consultative opinion because she examined Plaintiff only once. He further contends that the ALJ erred by giving more weight to the opinion of Dr. A. Dipeolu, a state-agency psychological consultant, because he never examined or treated Plaintiff. This argument, however, is inconsistent with the regulations and relevant Second Circuit authority.

An ALJ is entitled to rely upon the opinions of both examining and non-examining state-agency medical consultants because such consultants are experts in the field of social security disability. See 20 C.F.R. § 416.913a(b)(1) (effective March 27, 2017); see

also 20 C.F.R. § 416.927(e)(2)(i) (effective August 24, 2012, to March 26, 2017); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010); *Shelley*, 2019 WL 4805023, at *9 (W.D.N.Y. Oct. 1, 2019).  Further, the opinions of non-examining sources or consultative examiners may override the opinions of treating sources if they are better supported by the evidence in the record.  See *Netter v. Astrue*, 272 F. App'x 54, 55–56 (2d Cir. 2008); see also *Wilkins v. Comm'r of Soc. Sec.*, No. 1:18-CV-00067, 2019 WL 2500500, at *6 (W.D.N.Y. June 17, 2019).

Here, the ALJ explained why the opinions from Dr. Ippolito and Dr. Dipeolu merited more weight than Dr. Matthews's opinions.  As discussed above, the ALJ found that Dr. Matthews's opinions were inconsistent with the evidence as a whole, including the generally normal musculoskeletal, neurological, and psychiatric findings from Plaintiff's examinations and Plaintiff's daily activities.  (Tr. 29).  Further, Dr. Matthews's opinions were conclusory and contained no specific work-related limitations.  (Tr. 29).

In contrast, the ALJ found that the opinions of Dr. Ippolito and Dr. Dipeolu were consistent with the overall evidence of record, including Plaintiff's grossly normal mental status examinations discussed above.  (Tr. 28–29).  Moreover, the ALJ observed that Dr. Ippolito and Dr. Dipeolu were experts in the fields of psychiatry and in the Commissioner's regulations for evaluating disability, respectively.  (Tr. 29–29).   See 20 C.F.R. § 416.927(c)(5) (stating that ALJs generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist).   In fact, even Dr. Matthews acknowledged that an opinion from a mental-health specialist would merit more weight than his opinion.  (Tr. 1415).  Additionally, the ALJ found it significant that Dr. Ippolito supported her opinion

with a detailed mental status examination.  (Tr. 29).  See 20 C.F.R. § 416.927(c)(3) (the degree to which a medical source supports his or her decision is a factor to consider in weighing medical opinions).  The ALJ further observed that the opinions of Dr. Ippolito and Dr. Dipeolu were consistent with each other.  (Tr. 28–29).

The above evidence provided substantial support for the ALJ's finding that the opinions of Dr. Ippolito and Dr. Dipeolu deserved more weight than Dr. Matthews's opinions.  See *Bushey v. Berryhill*, 739 F. App'x 668 (2d Cir. 2018) (holding that the ALJ appropriately gave more weight to the opinion evidence of a psychiatric consultant over that of two treating sources where the consultant's opinion was more consistent with evidence of record); see also *Brown*, 2018 WL 1827662, at *4 (the ALJ properly credited the opinions of a consultative examiner and non-examining source over the claimant's treating mental-health counselor's opinion because they were more consistent with the record); *Woodworth v. Berryhill*, No. 6:17-CV-06216 (MAT), 2018 WL 1989973, at *6 (W.D.N.Y. Apr. 27, 2018) (observing that the claimant, who had the burden to show that she was disabled, failed to prove any greater functional limitations than reflected in the ALJ's RFC finding).

## CONCLUSION

For the reasons stated, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied, the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is granted, and this case is dismissed.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      June 5, 2020
            Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge